IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Ryan Lee, ) | C/A No. 0:14-292-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Thomas Ryan Lee, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In April 20, 2011, Lee applied for DIB, alleging disability beginning March 26, 2011.  Lee's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on January 25, 2013, at which Lee, who was represented by Joel Humphries, Esquire, appeared and testified.  After hearing testimony from a vocational expert, the ALJ issued a decision on March 22, 2013 finding that Lee was not disabled.  (Tr. 49-60.)

Lee was born in 1953 and was fifty-seven years old on his alleged disability onset date.  (Tr. 176.)  He has a high school education and past relevant work experience as a maintenance technician at a manufacturing company and a traffic signal technician.  (Tr. 211.)  Lee alleged disability due to back and neck problems, degenerative disc disorder, hepatitis C, and depression.  (Tr. 210.)

In applying the five-step sequential process, the ALJ found that Lee had not engaged in substantial gainful activity since March 26, 2011—his alleged onset date.  The ALJ also determined that Lee's degenerative disc disease was a severe impairment.  However, the ALJ found that Lee did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that Lee retained the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) except for work requiring lifting or carrying more than 50 pounds; lifting or carrying of 26 to 50 pounds more than occasionally; lifting or carrying of 25 pounds or less more than frequently; standing and/or walking in combination for a total of more than 6 hours in an 8 hour workday; sitting for more than 6 hours in an 8 hour workday; more than occasional stooping or climbing ladders, ropes, or scaffolds; or more than frequent balancing, kneeling, crouching, crawling, or climbing ramps or stairs.



(Tr. 55.) The ALJ found that Lee was unable to perform any past relevant work but that, considering Lee's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Lee could perform. Therefore, the ALJ found that Lee was not disabled from March 26, 2011 through the date of her decision.

Lee submitted additional information to the Appeals Council, which denied his request for review on March 26, 2014 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUES**

Lee raises the following issues for this judicial review:

Point I.        The ALJ Failed to Follow the Treating Physician Rule[;]

Point II.       The ALJ Failed to Properly Evaluate Mr. Lee's Credibility[.]

(Pl.'s Br., ECF No. 8.)

**DISCUSSION**

**A.     Treating Physician**

Lee first argues that the ALJ improperly gave "negligible" weight to the opinions of Dr. Edward Behling, Lee's treating physician.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight."  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered.  20 C.F.R. § 404.1527(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's

opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that

a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

On September 21, 2011, Dr. Behling completed a "Multiple Impairment Questionnaire" for Lee, indicating that he first treated Lee before 2005 and provides treatment every two to three months and as needed. (Tr. 500-07.) Dr. Behling stated that Lee's diagnoses include lower back pain, chronic pain syndrome, hepatitis C, and arthritis in his hands. Dr. Behling indicated that these diagnoses are supported by cervical, trapezius, parascapular, and lumbar muscular tenderness and spasms, as well as an August 2010 cervical x-ray and an August 2010 MRI of the lower spine. Dr. Behling stated that Lee "cannot sit for more than 2-3 hours. He has to pause to wash dishes, as he cannot stand over [the] sink. It takes him 4 hours to cut grass, which use[] to take him 30 minutes. Frequent muscle spasms at night cause insomnia." (Tr. 501.) Dr. Behling described Lee's pain as



constant with an estimated level of nine out of ten with moderately severe fatigue and denied being able to "completely relieve the pain with medication without unacceptable side effects." (Tr. 502.) He indicated that Lee could sit and stand/walk for 0-1 hours each in an eight-hour workday; could not sit or stand/walk continuously in a work setting; must get up and move around every thirty minutes to an hour and could sit again after fifteen minutes. (Tr. 502-03.) Additionally, Dr. Behling checked that Lee could occasionally lift or carry 0-5 pounds and never more and that Lee has significant limitations in doing repetitive reaching, handling, fingering, or lifting. Dr. Behling checked that in an eight-hour workday Lee has marked limitations (essentially precluded) in grasping, turning, twisting objects; using fingers/hands for fine manipulations; and using arms for reaching (including overhead). He listed Lee's prescription medications and stated Lee received multiple epidural steroid injections without adequate relief.

      The ALJ considered this opinion and gave it negligible weight. The ALJ first found that "Dr. Behling's progress notes do not document treatment for arthritis of the hands, and two epidural steroid injections does not have the same connotation[] as multiple injections." (Tr. 57.) The ALJ further found that Dr. Behling's opinions are not supported by his own progress notes or by any other medical evidence of record. The ALJ specifically observed that Dr. Andrew H. Rhea of Florence Neurosurgery & Spine (1) examined Lee in March 2011 and his examination "showed 5/5 muscle strength in all extremities; sensations were intact in all extremities; reflexes were intact; gait was normal; and straight leg raising was normal;" (2) stated in April 2011 that Lee's MRI scan from last August was exceptionally unremarkable; and (3) stated in May 2011 that an MRI scan showed no evidence of stenosis or disc herniation. (Id.) The ALJ also found that electrodiagnostic studies were normal and that state agency reviewers found less severity than asserted by Dr. Behling. Moreover,

the ALJ found that Lee's reported activities of daily living contradict the severe limitations asserted by Dr. Behling.[2] Finally, the ALJ found that to the extent that Dr. Behling's opinions are based upon self reports of Lee, these opinions are entitled to less weight as the ALJ found that Lee was not credible.

Lee argues that, applying the appropriate factors, Dr. Behling's opinion is entitled to controlling weight and, in the alternative, even if the ALJ did not err in failing to give his opinions controlling weight, then the ALJ erred in failing to adequately consider all the factors.[3] Lee first argues that contrary to the ALJ's belief that Dr. Behling relied heavily on Lee's self reports, his

---

[2] With regard to Lee's activities of daily living, the ALJ acknowledged that Lee testified at the hearing to driving two to three times per week to Florence (twenty-five miles round trip), taking his mother to Olanta once a week to visit her sister, watching television, walking in his yard which consists of an acre, watching his grandchild, reading, going grocery shopping with his wife, attending church three times a week, making coffee, and napping. However, the ALJ further observed that evidence in the record showed greater abilities and activities, such as an April 2011 telephone interview with a Social Security Administration employee where the employee reported observing that Lee was pleasant with no deficits in Lee's hearing, reading, breathing, understanding, coherency, concentrating, talking, or answering. (Tr. 58) (citing Tr. 206-08). The ALJ relied on a May 2012 function report where Lee indicated that he could lift twenty pounds; sit for three hours; stand for three hours; walk four hundred yards before needing to stop and rest; drive for thirty to forty miles; perform his personal care tasks; prepare meals; occasionally mow the yard; shop in stores (groceries, gas, and medicine); pay bills; and count change. In this report, Lee indicated the he would try to go out every day, did not use any ambulatory devices, wore glasses while reading, did not need to be reminded to take care of personal needs and grooming or take his medicine, did not need to be accompanied when he went out, and did not have any problems getting along with family, friends, neighbors, or others. (Tr. 58) (citing Tr. 235-42). Finally, the ALJ noted that in June 2012, it was reported that Lee was caring for his mother who had a stroke and he was having to lift her. (Tr. 58) (citing Tr. 527).

[3] The court observes that the ALJ considered another opinion by Dr. Behling. (See Tr. 57) (citing Tr. 508). However, Lee does not appear to directly challenge the ALJ's evaluation of this opinion. Even if his arguments could be construed as contending that the ALJ erred in giving this opinion negligible weight, the court's following analysis would similarly apply. Additionally, the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner and opinions by medical sources on that point are not entitled to special significance. See 20 C.F.R. § 404.1527(d).



opinions specifically indicated that they were based on clinical evidence of cervical, trapezius, parascapular, and lumbar muscular tenderness and spasms, as well as diagnostic x-rays and MRIs of the cervical and lumbar spine. Lee also argues that Dr. Behling's opinions are not inconsistent with the record as the only contradictory opinions in the record are from the non-examining state agency consultants. Lee challenges the ALJ's reliance on Dr. Rhea's treatment notes, arguing that Dr. Rhea's reports do not contradict Dr. Behling's opinions and pointing out that Dr. Rhea did not issue an opinion regarding Lee's functional capacity.[4] Finally, Lee appears to argue that his activities of daily living are not inconsistent with disability, first contending that his activities are not equivalent to working a full-time job on a sustained basis and also asserting that the ALJ inaccurately summarized some of his activities of daily living by failing to mention that he required his wife's assistance to grocery shop once every two weeks and that his mother's condition improved.

Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Behling's opinions and finds that Lee has failed to demonstrate that her decision to afford negligible weight to Dr. Behling's opinions is unsupported by substantial evidence. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). To the extent Lee alleges that the ALJ impermissibly interpreted medical evidence to

---

[4] Lee asserts that Dr. Rhea "recommended pain management due to the severity of Mr. Lee's condition." (Pl.'s Br. at 11, ECF No. 8 at 11) (citing Tr. 347). Lee appears to be exaggerating Dr. Rhea's statements. The court observes that the treatment note at issue states that Lee's "MRI scan shows no evidence of stenosis or disc herniation. Electrodiagnostic studies are normal. Unfortunately we have nothing to offer in terms of surgical treatment for him. I have recommended pain management evaluation. We would certainly be pleased to have Dr. Snoderly evaluate him. He will discuss this with Dr. Behling." (Tr. 347.)



discount Dr. Behling's opinions, the court disagrees. It is clear from the ALJ's decision that the ALJ, as part of her duties in weighing the evidence, properly relied on medical evidence in making her residual functional capacity determination and resolving conflicts of evidence. Where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). In this case, the ALJ noted inconsistencies between Dr. Behling's treatment records and his opinions as well as between findings by a specialist's review of diagnostic studies and Dr. Behling's opinions.[5] Further, Lee's arguments with regard to his activities of daily living simply do not demonstrate that the ALJ erred in finding these activities are inconsistent with Dr. Behling's opinions of very limited functional abilities by Lee. The ALJ also discounted Dr. Behling's opinion based on her determination that Dr. Behling relied on Lee's subjective reports of symptoms and limitations, which the ALJ determined were not credible. "An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations." Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). Although Lee separately argues that the ALJ erred in evaluating his credibility, for the reasons discussed below, the court disagrees. See infra, Section B. Moreover, it is undisputed that Dr. Behling was a treating physician for Lee;

---

[5] Lee argues that the ALJ improperly interpreted the medical evidence in discounting Dr. Behling's opinions; however, the court observes that the ALJ relies, in part, on the specialist's findings and interpretation of the medical evidence.

Page 10 of 19



however, that factor alone does mean that the ALJ erred in giving his opinions negligible weight. See 20 C.F.R. § 404.1527(c).

Contrary to Lee's arguments, the ALJ's decision is further supported by the opinions of state agency reviewers, Dr. James Weston and Dr. Isabella McCall.  Importantly, opinions from non-examining physicians, which in this case are opinions from state agency reviewers, can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence").  In evaluating the opinions from the state agency reviewers, the ALJ found that "[t]he consultants referenced specific medical evidence supporting their conclusions.  Based upon my review of the medical record, I find the consultants' opinions are consistent with the medical records existing at the time of their reviews; therefore, I give their opinions considerable, but not controlling weight for the time periods considered." (Tr. 57.)  While these reviewers did not possess Dr. Behling's opinions at the time they rendered their opinions, the ALJ clearly acknowledged the reviewers only possessed the records "*existing at the time of their*

*reviews*." (Id.) (emphasis added); see also Tanner v. Comm'r of Soc. Sec., No. 14-1272, slip op. at 12-13 (4th Cir. Feb. 12, 2015) (affirming an ALJ's assignment of great weight to the opinions of non-examining state agency consultants over the opinions of the claimant's treating physicians and stating that "while the state agency consultants did not have the benefit of a full record, the ALJ did, and he made clear that their findings were consistent with the evidence of record, including evidence submitted since the date of reconsideration"). Lee has failed to demonstrate that the ALJ erred in evaluating these opinions or in giving them greater weight over Dr. Behling's opinions. Thus, Lee cannot demonstrate that this portion of the ALJ's decision is unsupported by substantial evidence or controlled by an error of law.

For all of these reasons, the court finds that Lee has not shown that the ALJ's decision with regard to Dr. Behling's opinions was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.     Lee's Subjective Complaints**

Lee next argues that the ALJ erred in evaluating his subjective complaints. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[6] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these

---

[6] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)   Your daily activities;
(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).



The ALJ summarized Lee's testimony as to his alleged disabling conditions as follows:

> At the hearing, the claimant alleged disability due to back problems, arthritis in his hands, hepatitis C, depression, and anxiety. He subjectively complained of vision and hearing limitations, pain between the shoulder blades, sitting limited to 25 to 30 minutes, walking limited to a tenth of a mile, lifting limited to 16 pounds (but cannot lift it repeatedly), decreased ability to bend at the waist, burning neck pain, neck stiffness, limited ability to rotate his head from side to side, sharp low back pain, standing limited to 30 minutes, back spasm every other day (lasts for 15 minutes, leaving him fatigued for 30 minutes), crying spells, nervousness, some self-isolation, decreased concentration, decreased grip strength, and vertigo when on a ladder.

(Tr. 52.) However, the ALJ also observed that Lee testified that he had a twelfth grade education, while a disability report indicated that Lee had completed a year of college and had training in industrial electricity. The ALJ found that such a discrepancy tends to undermine Lee's credibility. (Tr. 51-52.) Furthermore, the ALJ observed that Lee testified he could only receive treatment from Dr. Behling and that no other doctor would see him based on the cost. The ALJ found that these statements were not credible because Lee also testified that he served in the Army from October 1971 to October 1974 and therefore is a veteran. The ALJ observed that Lee submitted Veterans Administration treatment records into evidence indicating that he had access to medical treatment through the Veterans Administration. (Tr. 52.)

The ALJ found that the objective evidence did not support the alleged severity of Lee's reported symptoms. (Tr. 52, 56.) In support of this finding, the ALJ discussed the diagnostic evidence, including radiographs, MRIs, a DEXA bone density study, and electrodiagnostic studies, as well as clinical evidence from Veterans Administration Medical Center, Dr. Behling, and Dr. Rhea. (See Tr. 53-54.) The ALJ also observed that Lee takes several medications to control his symptoms and did not report any adverse side effects or ineffectiveness of his medication. Other than taking medication, Lee reported use of a heating pad and sitting in a tub of water. (Tr. 57.)



Additionally, as noted above and repeated here for convenience, with regard to Lee's activities of daily living, the ALJ acknowledged that Lee testified at the hearing to driving two to three times per week to Florence (twenty-five miles round trip), taking his mother to Olanta once a week to visit her sister, watching television, walking in his yard which consists of an acre, watching his grandchild, reading, going grocery shopping with his wife, attending church three times a week, making coffee, and napping. However, the ALJ further observed that evidence in the record showed greater abilities and activities, such as a April 2011 telephone interview with a Social Security Administration employee where the employee reported observing that Lee was pleasant with no deficits in Lee's hearing, reading, breathing, understanding, coherency, concentrating, talking, or answering. (Tr. 58) (citing Tr. 206-08). The ALJ relied on a May 2012 function report where Lee indicated that he could lift twenty pounds; sit for three hours; stand for three hours; walk four hundred yards before needing to stop and rest; drive for thirty to forty miles; perform his personal care tasks; prepare meals; occasionally mow the yard; shop in stores (groceries, gas, and medicine); pay bills; and count change. In this report, Lee indicated the he would try to go out every day, did not use any ambulatory devices, wore glasses while reading, did not need to be reminded to take care of personal needs and grooming or take his medicine, did not need to be accompanied when he went out, and did not have any problems getting along with family, friends, neighbors, or others. (Tr. 58) (citing Tr. 235-42). Finally, the ALJ noted that in June 2012, it was reported that Lee was caring for his mother who had a stroke and he was having to lift her. (Tr. 58) (citing Tr. 527).

Therefore, the ALJ concluded that based on the foregoing, "the alleged severity of the claimant's subjective complaints, evaluated pursuant to Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996), 20 C.F.R. sections 404.1529 and 416.929 (2009), and Social Security Ruling 96-7p, is not



supported by the evidence.  For the reasons noted intermittently throughout the decision, I find the claimant not credible."  (Tr. 58.)

Lee challenges the reasons offered by the ALJ to discount his credibility.  Specifically, he argues that "none of Mr. Lee's activities contradict his allegations or establish that he has the capacity to work a full-time job in a competitive work environment"; that Dr. Behling stated that Lee's pain was not effectively controlled by his medication; and that Lee's failure to mention some of his additional education has little, if any, relevance to the disability determination.  Lee also challenges the ALJ's contention that Lee could receive treatment at the Veterans Administration free of charge, pointing to a letter Lee submitted to the Appeals Council indicating that he paid for such treatment, and argues that the ALJ failed to inquire about this possibility at the hearing.  Finally, Lee argues that the ALJ failed to consider his strong work history beginning in 1971.

The court has carefully considered the parties' arguments and the record in this matter and finds that Lee has failed to demonstrate that the ALJ's evaluation of Lee's subjective complaints is unsupported by substantial evidence or controlled by an error of law.  See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  As an initial matter, Lee has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating his credibility.  See 20 C.F.R. § 404.1529(c)(3)



(providing that in evaluating subjective complaints, the Commissioner will consider the following relevant factors: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms"). In fact, the ALJ's decision reflects that she carefully considered these factors in evaluating Lee's credibility throughout the decision. Even accepting Lee's arguments as true, the court finds that his arguments do not render the ALJ's decision unsupported in light of all the reasons offered by the ALJ. Moreover, although Lee argues that his activities do not establish that he can perform full-time work, the court finds that Lee has failed to demonstrate that the ALJ's finding that his activities of daily living were inconsistent with his subjective complaints is unsupported by substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Further, to the extent that Lee attempts to point to selective records that may support his subjective complaints, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including

objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (finding an ALJ did not err in considering evidence that a claimant exaggerated the severity of his symptoms as a factor in weighing a claimant's credibility).

## RECOMMENDATION

For the foregoing reasons, the court finds that Lee has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 12, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).